[No. 20698. Department One. — January 4, 1891.]

## THE PEOPLE, RESPONDENT, *v.* LLEWELLYN A. POWELL, APPELLANT.

CRIMINAL LAW — TRIAL BY JURY — COMMON LAW. — By the common law, the trial of all crimes is required to be by a jury selected from the vicinage or county where the crime is alleged to have been committed.

ID.— CONSTITUTIONAL LAW — BILL OF RIGHTS. — Section 7 of the bill of rights, in the state constitution, providing that "the rights of trial by jury shall be secured to all, and remain inviolate," refers to the right as it existed at common law.

ID.— PENAL CODE — UNCONSTITUTIONAL PROVISION — CHANGE OF PLACE OF TRIAL — APPLICATION OF DISTRICT ATTORNEY. — Subdivision 2 of section 1033 of the Penal Code, authorizing a change of the place of trial of a criminal action to another county, upon application of the

district attorney, without the consent of the defendant, where no jury can be obtained for the trial of the defendant in the county where the action is pending, is unconstitutional and void.

ID. — JURISDICTION — VENUE.— The superior court of another county than that in which the crime was committed has no jurisdiction to try the case, where the venue was changed to such county upon application of the district attorney without the consent of the defendant.

ID. — CONSTRUCTION OF PENAL CODE — CHANGE OF PLACE OF TRIAL'— INSUFFICIENT APPLICATION. — If it be conceded that subdivision 2 of section 1033 of the Penal Code is valid, it must be strictly construed and strictly pursued; and an application on the part of the district attorney showing merely that a fair and impartial jury cannot be obtained therein, and not showing that all legal means had been exhausted to procure a jury, and that no jury can be obtained therein, is insufficient.

ID. — COMPETENCY OF JURORS — IMPARTIALITY. — A juror is not necessarily incompetent because he is not impartial; and proof that a fair and impartial jury cannot be obtained is not equivalent to proof that no jury can be obtained.

ID. — HOMICIDE — EVIDENCE — REBUTTAL — HABIT OF DECEASED — DECLARATIONS. — Upon trial of a charge of murder, evidence that the defendant believed that the deceased was armed at the time of the killing cannot be rebutted by evidence that the deceased was not in the habit of carrying arms, and had so stated on various occasions, and had refused to go armed on the morning of the homicide, the declarations of the deceased not appearing to have been communicated to the defendant.

ID. — CHARACTER OF DECEASED FOR PEACE AND QUIETNESS.— Evidence to sustain the character of the deceased for peace and quietness cannot be given by the prosecution unless it has been attacked by the defendant; nor can such character be proved by evidence that he was not in the habit of carrying arms, or of his refusal to do so.

ID.— DECLARATIONS OF DECEASED — QUARRELS — REBUTTAL. — Evidence that the deceased had said that he had quarreled with several persons is incompetent, and if given by the defendant, without objection, cannot be rebutted by proof that the deceased was not in the habit of going armed.

ID. — CONVERSATIONS OF WITNESS WITH THIRD PERSONS — STRIKING OUT EVIDENCE. — When a witness for the prosecution has testified to conversations with third persons, which the prosecution fails to connect with the defendant by proposed proof, a motion of the defendant to strike out such conversations should be sustained.

ID.— DECLARATIONS OF DEFENDANT — THREATS AGAINST WITNESS. — Evidence of a conversation of a witness with the defendant, relating to threats of the defendant toward the witness, on the supposition that he was the author of a newspaper article published by the deceased, is incompetent against the defendant, it not appearing that the conversation was communicated to the deceased.

ID. — SELF-DEFENSE— REASONABLE FEAR OF BODILY HARM — DANGEROUS CHARACTER OF DECEASED — WARNING OF DEFENDANT. — Where the defendant claims to have killed the deceased in self-defense, while acting with reasonable prudence, and under an honest belief that he was in

imminent danger of death or of great bodily injury, it is competent for
him to show that before the shooting he was informed that the deceased
was a dangerous man, and such information need not have been brought
home to the deceased; but it is not competent merely to prove that the
defendant was warned to look out for the deceased.

ID. — ARGUMENT — PRIVATE COUNSEL — ASSISTANCE OF DISTRICT ATTORNEY
— DISCRETION. — It is discretionary with the trial court to allow private
counsel to be employed to assist the district attorney in the prosecution
of a defendant charged with murder, and to open and close the argument
to the jury, with the consent and acquiescence of the district attorney.

ID. — BURDEN OF PROOF — PREPONDERANCE OF EVIDENCE — REASONABLE
DOUBT. — Proof of the homicide by the prosecution does not cast upon
the defendant the burden of proving, by a preponderance of evidence,
that the killing was justifiable or was only manslaughter, but it is suffi-
cient if the evidence adduced by the defendant raises a reasonable doubt
of his guilt.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion of the court.

*George C. Ross*, and *George A. Knight*, for Appellant.

*Attorney-General Johnson, Eugene N. Deuprey, Samuel
M. Shortridge*, and *E. F. Fitzpatrick*, for Respondent.

WORKS, J. — The appellant was charged by informa-
tion, in the county of San Mateo, with the crime of
murder, alleged to have been committed in that county.
He was twice tried in said county, and the jury failed to
agree upon a verdict at each trial. Without any effort
made to procure a third jury, the district attorney moved
the court, under section 1033 of the Penal Code, for a
change of venue to another county. The material part
of the application was as follows: —

"Said district attorney, on behalf of the people of the
state of California, hereby makes application to said
court for a change of venue from said county of San
Mateo, to some convenient county, of the above case of the
People of the State of California *v.* Llewellyn A. Powell,

on the grounds and for the reasons *that a fair and impartial jury cannot be obtained for the trial of said case in said county of San Mateo,* the same being the county where said action is now pending, and hereby states the following facts and causes for making said application, viz.: That the above-named defendant is charged, by information filed in said superior court of said county of San Mateo, with the crime of murder, alleged to have been committed in the month of November, 1887, in killing, in said county, at said time, one Ralph S. Smith; that said defendant has had two trials in said superior court on said charge; that the first trial was had in April, 1888, and the second trial in August, 1888; that at said first trial there were summoned from all parts of said county, to appear before said court, to serve as jurors in said case, seventy-two citizens, and of said number sixty-seven were examined before a jury could be obtained in said case; that at said second trial there were summoned from all parts of said county, to appear before said court, to serve as jurors in said case, 184 citizens, and of said number 173 were examined before a jury could be obtained to try said case; that said county is small in size and population, and a large number of its citizens whose names appear upon its assessment roll are Italians and Portuguese, and are disqualified from serving as jurors, in consequence of not understanding the English language; that, also, a large number of those citizens whose names appear upon the assessment roll of said county live in the city and county of San Francisco, and are therefore not liable to jury duty in said county of San Mateo; that said case was so horrible in its nature that it attracted the attention of the people of and has been fully discussed in all parts of said county of San Mateo; that said case has also been discussed, more or less, by the citizens summoned to appear to serve as jurors as aforesaid; that there are two local weekly newspapers in said county, having a general circulation therein, and the newspapers

of the city and county of San Francisco also have a wide-spread circulation throughout said county of San Mateo, and by and through the columns of the newspapers aforesaid, the facts of said case, and the trials thereof, have been fully discussed before the citizens of said county of San Mateo.

"For the reasons herein set forth, said district attorney says that *a fair and impartial jury cannot be obtained to try said case in said county of San Mateo*, and said district attorney therefore prays that said court make an order transferring said action of the People of the State of California *v.* Llewellyn A. Powell, now pending in said court as aforesaid, to some convenient county free from like objections."

This application was supported by the following affidavit of the district attorney:—

"George H. Buck, being duly sworn, says that he is the district attorney of said county of San Mateo, and is the same person who made and signed the foregoing application; that as such district attorney he makes said application; that he has read said application, and knows the contents thereof, and that the same is true of his own knowledge, except as to the matters which are therein stated on his information or. belief, and as to those matters he believes it to be true."

In addition to this affidavit there were several. others, by citizens of said county, in which each of the affiants, after alleging his residence in the county and acquaintance with the people thereof, alleged that he knew the contents of the affidavit of the district attorney, and that " said affidavit is *well founded and true.*"

The assessor of the county also made affidavit that he had examined the last assessment of the county, and that there were about six hundred persons among those whose names appeared on the assessment roll who had the necessary qualifications and were competent to serve as. jurors of said county. The sheriff of the county also

made the following affidavit in support of the application:—

"W. H. Kinne, being duly sworn, says that he is now, and has been for more than two years last past, the sheriff of said county; that at the two trials of the above case, in said county, he summoned most of the jury in both of the said trials of said case; that in doing so he was obliged to and did go to and visit all parts of said county; that he was a candidate for re-election at the last election, in the fall of 1888, for the office of sheriff of said county, and during the said campaign he visited all portions of said county many times; that he has also seen many people of and from all parts of said county, at the county seat, to wit, at Redwood City, during the past year; that he has had an opportunity to and has discussed the merits of the case of the People of the State of California *v.* Llewellyn A. Powell, now pending in said superior court, and that he understands the feelings of the people in regard to said case, and has often heard them express their opinion about said case; that from such expression of the people so interviewed, he says *that a fair and impartial jury cannot be obtained* to try said case in said county."

The defendant objected to the granting of the change of venue, and in opposition to the application therefor, filed the affidavit of one of his attorneys and seventeen other citizens of the county, to the effect that they were residents of the county and knew many of the other residents thereof, and that in their opinion a fair and impartial jury could be obtained in said county to try the defendant.

The application was granted, and the venue changed to the city and county of San Francisco. When the case reached that county, the defendant objected to being tried therein, on the grounds, in substance, that the offense was charged to have been committed in the county of San Mateo; that the superior court of that

county alone had jurisdiction to try the defendant; and
that the court of the city and county of San Francisco
had no jurisdiction in the matter, and moved that the
cause be remanded to the county of San Mateo for trial.
The objection and motion were overruled, the defendant
put upon his trial, convicted of manslaughter, and sen-
tenced to the state's prison for the term of ten years.
He moved for a new trial, which was denied, and now
appeals to this court.

The change of venue was granted under section 1033
of the Penal Code, as amended, which provides: "A
criminal action may be removed from the court in
which it is pending, . . . . 2. On the application of the
district attorney, on the ground that from any cause *no
jury can be obtained for the trial of the defendant* in the
county where the action is pending."

The appellant contends, first, that this section of the
code, so far as it authorizes a change of venue on the
application of the district attorney without the consent
of the defendant, is in conflict with section 7 of the bill
of rights, contained in the constitution of this state,
which provides: "The right of trial by jury shall be
*secured* to all, and remain *inviolate.*"

The precise point urged upon us is, that the effect of
this clause in the bill of rights is to preserve and con-
tinue in force the right of trial by jury *as it existed at
common law*, and that the common-law right was to a
trial by jury selected from the vicinage or county. This
calls upon us to determine,—1. What the common-law
right of trial by jury was; and 2. Whether or not the
right is the same under our constitution. We think
the common-law right of trial by jury is clearly and
definitely stated by Mr. Blackstone in his Commentaries
(book 4, page 350), as follows: "When, therefore, a pris-
oner on his arraignment has pleaded not guilty, and for
his trial hath put himself upon the country, which coun-

try the jury are, the sheriff of the county must return a panel of jurors, *liberos et legales homines, de vicineto;* that is, freeholders, without just exception, *and of the visne, or neighborhood;* which is interpreted to be of the county where the fact is committed." And Mr. Cooley, in his work on Constitutional Limitations, 5th ed., page 392, says: "The jury must also be summoned from the vicinage where the crime is supposed to have been committed." Again, in Story on Constitution: "By the *common law,* the trial of all crimes is required to be in the *county* where they were committed. Nay, it originally carried its jealousy still further, and required that the jury itself should come from the *vicinage* of the place where the crime was alleged to be committed." (Story on Constitution, secs. 1769, 1779, 1781, 1791. See also *Stuart v. Kimball,* 43 Mich. 448.)

There can be no doubt that such was the common-law right of trial by jury. We are led to inquire, therefore, whether the same right is given, or preserved, by our constitution, and if so, whether the section of the Penal Code under consideration is in conflict with this constitutional right. Our constitution does not define the right of trial by jury. It was a right then existing, the extent, scope, and limitations of which were well understood, and the constitution simply provides that such right shall be secured, and remain inviolate. If the right at common law was as above stated, there can be no question but that an act of the legislature authorizing the trial of a defendant out of the county where the offense is charged to have been committed is an abridgment of the right, and for that reason void. Such statutes have been almost uniformly condemned as unconstitutional in other states. (*Kirk* v. *State,* 41 Tenn. 344; *Wheeler* v. *State,* 24 Wis. 52; *Osborn* v. *State,* 24 Ark. 629; *State* v. *Howard,* 31 Vt. 414; *Ex parte Rivers,* 40 Ala. 712; *State* v. *Knapp,* 40 Kan. 148.)

It is contended, by the respondent, that in the states in which these cases were decided the constitutions provided, in express terms, that one charged with crime should be entitled to a trial by a jury selected from the county or district where the offense is charged to have been committed, and therefore the statutes referred to were in direct conflict with the express requirements of the constitutions, while in this state the constitution contains no such requirement. As to most of the states, the fact contended for is true, but not as to all of them. But can this make any difference? Does not our constitution confer upon a defendant charged with crime precisely the same right, although not expressed in terms? We have seen that this was the well-understood common-law right. This court has said that it is this same right that is held inviolate by our constitution. In *Koppikus* v. *State Capital Commissioners,* 16 Cal. 253, in discussing the effect of this constitutional provision, the court said: "The provision of the constitution, that 'the right of trial by jury shall be secured to all, and remain inviolate forever,' applies only to civil and criminal cases in which an issue of fact is joined. *The language was used with reference to the right as it exists at common law.* It is true that the civil law was in force in this state at the time of the adoption of the constitution; but its framers were, with few exceptions, from states where the common law prevails, and where the language used has a well-defined meaning. The people who, by their votes, adopted the constitution, at least a vast majority of them, were also from countries where the common law is in force, and they looked upon the right secured as the right there known and there held inviolate. It is in this common-law sense that the language has always been regarded by the courts of this state. It is a right 'secured to all,' and 'inviolate forever,' in cases in which it is exercised in the administration of justice according to the course of the common law as that law is understood in the several

states of the Union." (See also *Cassidy* v. *Sullivan*, 64 Cal. 266.)

It is true, the question before the court, in the cases cited, was as to the class of cases triable by jury; but the language used would have been just as appropriate and applicable if the question now before us had been under consideration. Mr. Cooley, in his work on Constitutional Limitations, in discussing the effect of such a constitutional provision as ours, says: "Accusations of criminal conduct are tried, at the common law, by jury; and wherever the right to this trial is guaranteed by the constitution, without qualification or restriction, it must be understood as retained in all those cases which were triable by jury at the common law, *and with all the common-law incidents to a jury trial,* so far, at least, as they can be regarded as tending to the protection of the accused. . . . . Many of the incidents of a common-law trial by jury are essential elements of the right. The jury must be indifferent, between the prisoner and the commonwealth; and to secure impartiality, challenges are allowed, not only for cause, but also peremptory, without assigning cause. *The jury must also be summoned from the vicinage where the crime is supposed to have been committed;* and the accused will thus have the benefit, on his trial, of his own good character and standing with his neighbors, if these he has preserved; and also of such knowledge as the jury may possess of the witnesses who may give evidence against him. He will also be able, with more certainty, to secure the attendance of his own witnesses." (Cooley on Constitutional Limitations, 5th ed., pp. 390–393.)

This same doctrine, and the reasons for upholding it, are more fully stated by the same learned author and judge in the case of *Stuart* v. *Kimball,* 43 Mich. 448, in which it is said:—

"The constitution of the state provides that 'the right of trial by jury shall remain, but shall be deemed

to be waived in all civil cases unless demanded by one of the parties in such manner as shall be prescribed by law.' (Art. 6, secs. 3, 27.) The right is to *remain.* What right? Plainly, the right as it existed before,— the right to a trial by jury, as it had become known to previous jurisprudence of the state. (*Underwood* v. *People*, 32 Mich. 1; 20 Am. Rep. 633.) The right is not described here; it is not said what shall be its incidents; it is mentioned as something well known and understood under a particular name; and by implication, at least, even a waiver of its advantages is forbidden. If the accused himself cannot waive them, plainly the legislature cannot take them away. The next section of the constitution repeats the guaranty of this method of trial 'in every criminal prosecution,' and nothing is better settled on the authorities than that the legislature cannot take away a single one of its substantial and beneficial incidents (Opinions of Judges, 41 N. H. 550; *Ward* v. *People*, 30 Mich. 116); and even the accused cannot waive any one of the essentials. (*Work* v. *State*, 2 Ohio St. 296; 59 Am. Dec. 671; *Cancemi* v. *People*, 18 N. Y. 128; *Hill* v. *People*, 16 Mich. 251; *Allen* v. *State*, 54 Ind. 461.)

" Now that in jury trial it is implied that the trial shall be by jury of the vicinage is familiar law. Blackstone says the jurors must be of the *visne*, or neighborhood; which is interpreted to be of the county where the fact is committed. (4 Bla. Com. 350.) This is an old rule of the common law (Hawk. P. C., b. 2, c. 40; 2 Hale P. C. 264); and the rule was so strict and imperative that if an offense was committed partly in one county and partly in another, the offender was not punishable at all. (Hawk. P. C., b. 2, c. 25; 1 Chitty's Crim. Law, 177.) This overnicety was long since dispensed with, but the old rule has in the main been preserved in its integrity to this day. It is true that Parliament, as the supreme power of the realm, made some exceptions, which are

enumerated by Mr. Chitty in his treatise on Criminal Law (vol. 1, p. 169), the chief of these being cases of supposed treason, or misprision of treason, examined before the privy council, and which, under the statute of Henry VIII., might be tried in any county, and offenses of the like character committed out of the realm, and which, by a statute of the same arbitrary reign, were authorized to be tried in any county in England. But it is well known that the existence of such statutes, with the threat to enforce them, was one of the grievances which led to the separation of the American colonies from the British empire. If they were forbidden by the unwritten constitution of England, they are certainly unauthorized by the written constitutions of the American states, in which the utmost pains have been taken to preserve all the securities of individual liberty. It has been doubted in some states whether it was competent even to permit a change of venue on the application of the state, to escape local passion, prejudice, and interest. (*Kirk* v. *State,* 1 Cold. 344; *Osborn* v. *State,* 24 Ark. 629; *Wheeler* v. *State,* 24 Wis. 52.) But this may be pressing the principle too far. (*State* v. *Robinson,* 14 Minn. 447; *Gut* v. *State,* 9 Wall. 35.) But no one doubts that the right to a trial by a jury of the vicinage is as complete and certain now as it ever was, and that in America it is indefeasible. (1 Bishop's Crim. Law, 2d ed., sec. 552; Wharton's Crim. Law, sec. 277; *Paul* v. *Detroit,* 32 Mich. 108; *Ward* v. *People,* 30 Mich. 116.)"

This case was decided under a constitutional provision the same, in effect, as our own, and is directly in point.

It may be said that the effect of holding this statute to be unconstitutional will be to render it necessary, in a case where no jury can be obtained in the county, that a defendant be discharged or held in confinement for an indefinite time, until such changes take place in the county that a jury can be had; but we cannot take away from the defendant a right conferred upon him by the

constitution, on the mere ground that such a result may follow in rare cases. The right is one that has always been regarded as of great importance, and has been preserved and continued in force by the constitution of the United States, and perhaps by the constitutions of every state in the Union. If it be allowed that the legislature can break in upon this right, and take it away or abridge it on the ground and for the reason stated in the statute under consideration, it must be admitted that it may do so for other reasons, and thus the right guaranteed by the constitution will be subject to modification at the will of the legislature, and this cannot be conceded. We are convinced that the section of the Penal Code, so far as it authorizes a change of venue, on the application of the district attorney, without the consent of the defendant, is unconstitutional and void; that the change of venue in this case was improperly granted; and that the court below had no jurisdiction to try the cause.

But if it were conceded that the statute is valid, the result of this appeal must be the same. The application for the change of venue, and the affidavits in support of it, were entirely insufficient to bring the case within the statute, or to authorize a change of the place of trial. The application was not made on the ground that *no* jury could be obtained in the county, but because a *fair and impartial* jury could not be obtained. As to what will constitute a fair and impartial jury, there may be many different opinions. The statement that such a jury could not be obtained was the statement of a mere conclusion, and the facts did not show that *no* jury could be obtained. There are two modes provided, by which a defendant or the people may avoid a trial by partial or unfair jurors; viz., challenges for cause, which exclude all persons from the jury who are legally incompetent to serve as such, and peremptory challenges, by which a party may relieve himself of jurors who he believes will not be fair and impartial jurors. This last

kind of challenge is limited, and it may happen that
when a party's right of peremptory challenge is ex-
hausted, there may remain on the jury persons who are
not, in his estimation or in fact, fair and impartial, but
who are competent jurors.   The application, and the
proof to support it, do not show that a jury of such per-
sons as these might not have been obtained.   It is per-
fectly clear that the intention of the legislature was to
make a distinction between the grounds upon which the
people and the defendant should be entitled to a change
of venue.   The defendant has only to show that a fair
and impartial trial cannot be had in the county.   (Pen.
Code, sec. 1033.)   The application before us would have
been sufficient under that clause, but it is not sufficient
under the clause relating to the right of the district at-
torney to a change of venue which provides that the
change may be had where no jury can be obtained, which
is quite a different thing, as we have attempted to show.
A juror is not necessarily incompetent because he is not
impartial.   He may favor one party or the other, and
yet, if he has not formed or expressed an opinion as to
the merits of the cause, he cannot be challenged for cause.
For this reason, proof that a *fair and impartial* jury can-
not be obtained is not equivalent to proof that *no* jury
can be obtained.   A statute of this kind, if valid, should
be strictly construed, and if it could be enforced at all,
in our judgment the change should not be granted until
all legal means to procure a jury had been exhausted,
and no jury could be obtained.   It should not be allowed
to rest upon the mere opinion of persons, however
numerous, that a jury could not be procured.

The conclusion we have reached on this point is de-
cisive of this appeal, but there are other questions pre-
sented, which may arise on another trial, which we feel
it our duty to decide.

The prosecution was allowed, over the objection of the
defendant, to prove in rebuttal that the deceased was not

in the habit of carrying arms; that on various occasions he had so stated; and that, on the morning of the shooting, he had refused to go armed, when it was suggested that he had better do so. We have looked in the transcript in vain for any evidence on the part of the defendant which could justify or call for any such evidence in rebuttal. There was evidence tending to show that the defendant believed the deceased to have been armed at the time he shot him. This rendered it competent for the prosecution to prove that, as a matter of fact, he was not armed at that time, but it did not justify the proof as to his general habit with respect to the carrying of weapons, or his declarations with reference to the matter, not made in the presence of the defendant, and not shown to have been communicated to him prior to the shooting. There was no evidence on the part of the defendant going to show that the character of the deceased for peace and quietness was bad; therefore the evidence cannot be justified on the ground that it tended to show his good character in these respects. Evidence to sustain his character could not be heard unless it had been attacked (*People* v. *Anderson,* 39 Cal. 704); and if it could, it would not have been competent to prove it by evidence that he was not in the habit of carrying arms, or that he had refused to do so.

On cross-examination of one or more of the witnesses for the prosecution, the defendant asked whether the deceased had not had quarrels with several persons named, and it was admitted that the deceased had so stated. There was no objection to this evidence by the prosecution. It was clearly incompetent, and if it had been objected to, would no doubt have been excluded. It is claimed that this evidence on the part of the defense rendered the above-mentioned proof competent. We do not think so. In the first place, the evidence on the part of the defense was incompetent, as we have said; but if it were not, we do not see how the evidence offered in

rebuttal, that the deceased was not in the habit of going armed, tended to rebut the proof that he had stated to some one that he had quarreled with certain persons.

There was also evidence admitted, in behalf of the prosecution, of conversations between the witness Mrs. Willis and third parties, not in the presence of the defendant, and with which he was in no way connected. This evidence should have been excluded. It was admitted by the court below upon the assurance of counsel for the defendant that it would be brought home to the defendant, which was not done. The same may be said of the testimony of the witness Glennon, of conversations between Mrs. Willis and himself. The prosecution having failed to connect the defendant with the subject-matter of the conversation, the defendant moved to strike out the evidence. The motion was denied. This was error. The evidence should have been stricken out. The same witness, Glennon, was also allowed to testify to a conversation with the defendant. The ill-feeling which resulted in the death of Mr. Smith, at the hands of the defendant, grew out of an article published in a newspaper of which the deceased was proprietor. The conversation testified to by Glennon was with reference to this article, and tended to show that the defendant believed the witness was the author of the article, and abused him, and threatened to get even with him; that in the same connection he made abusive remarks about one Mrs. Willis, and that, subsequently, during the same day, he returned, and stated to Glennon that he had learned that he was not the author of the article, and apologized for the language he had used. This evidence was well calculated to prejudice the jury against the defendant, and was immaterial and incompetent. If it had been shown to have been communicated to the deceased, it might have tended, in some small degree, to excuse his conduct toward the defendant at the time of the shooting; but it was not shown that it was communicated to him. It could hardly be

claimed that the threat of the defendant to "get even" with Glennon was evidence tending to prove that he killed the deceased, or the motive of the killing. And if this were not so, that part of the conversation relating to Mrs. Willis, and which the defendant moved specially to strike out, was clearly incompetent.

It is contended by the appellant that the court below excluded evidence offered by him to the effect that he was told before the shooting that the deceased was a dangerous character, and that he had better beware of him, and that this was error. The defendant claimed, and introduced evidence tending to show, that in firing the shot which caused the death of deceased, he acted in self-defense. In connection with the evidence as to what occurred at the time of the shooting, it would no doubt have been competent for the defendant to show that before the shooting he was informed that the deceased was a dangerous man. (*State* v. *Lull*, 48 Vt. 586.)

Where a defendant claims to act in self-defense, any evidence tending to show that he acted as a reasonably prudent man would have acted under the circumstances is competent. (*People* v. *Iams*, 57 Cal. 119, 130; *People* v. *Westlake*, 62 Cal. 307.)

In this case, the evidence tended to show that the defendant was attacked by the deceased, and in the rencounter that followed shot and fatally wounded him. In judging whether the defendant acted with reasonable prudence and caution, and in the honest belief that he was put in imminent danger of death or great bodily injury, it was proper that the jury should know, if such were the fact, that he had been informed beforehand that the man that attacked him was a dangerous character, and so believed at the time, as such information and belief might reasonably influence the conduct of a prudent man under such circumstances. Such evidence does not rest upon the necessity of showing that the communication was brought home to the deceased, as

counsel for respondent contend. The sole object of it is
to show the state of mind of the defendant at the time of
the shooting, and for this purpose it was proper, and should
have been admitted. There may be some doubt whether
the questions put to the witnesses were such, in form, as
to raise the point, but the question has been presented
on its merits here. The form of the questions were not
objected to in the court below, nor are they here. In
the effort to prove a certain state of facts, either the
question put to the witness should disclose clearly what it
is proposed to prove, or a proposition to prove certain
facts should be submitted to the court below, and re-
fused, in order to present the question in this court.
Neither was done here, and we are led to believe, by cer-
tain questions put to the defendant on the same subject,
that the communication to the defendant was not of the
kind claimed by the appellant. It certainly was not
competent to show that the defendant was warned to
" look out " for the deceased, or the like. This would be
quite a different thing from proving that the deceased
was a dangerous man, and one who might be expected
to go to extreme measures if he should attack the defend-
ant. For these reasons, if no other error appeared in
the record, the cause would not be reversed on this
ground.

The rulings of the court in excluding certain ques-
tions asked the witness Mrs. Smith, widow of the de-
ceased, on cross-examination, with reference to certain
articles appearing in the paper formerly owned by her
husband, after the first trial of this case, and excluding
said articles when offered in evidence, were not erro-
neous.

There was no error in allowing private counsel,
employed to assist the district attorney in the prose-
cution of the case, to open and close the argument. The
court below must be left to determine upon the pro-
priety of allowing such a course to be taken, and so long

as private counsel conduct the prosecution properly, we see no reason for holding that the entire argument may not be made by them, with the consent and acquiescence of the district attorney and the trial court.

The court below gave the following instruction, which is complained of by the appellant: "In this case, the *homicide* having been *established by the state*, unless the testimony of the state proves that the offense was manslaughter, or unless such testimony tends to show that the homicide was excusable or justifiable, the burden of proof is upon the defendant to show, *by a preponderance of evidence*, that the *crime* was only manslaughter, or was justifiable."

This instruction was erroneous, because the homicide being established by the state, it cast upon the defendant the burden of proving, *by a preponderance of the evidence*, that the killing was justifiable, or only manslaughter. (*People* v. *Bushton*, 80 Cal. 160; *People* v. *Elliott*, 80 Cal. 296; *People* v. *Lanagan*, 81 Cal. 142.)

Judgment and order reversed, and cause remanded, with instruction to the court below to remand the cause to the superior court of the county of San Mateo for further proceedings.

McFARLAND, J., and SHARPSTEIN, J., concurred.

DE HAVEN, J., concurring. — I concur in the judgment. The second subdivision of section 1033 of the Penal Code is clearly unconstitutional. There was also error in the giving of the instruction referred to in the opinion of Mr. Justice Works. Upon the other points therein discussed, I express no opinion.

THORNTON, J., concurring. — I concur in the above, except as to the instruction discussed in it. I am of opinion that the intruction is sound law, and that there was no error in giving it.

Hearing in Bank denied.