## *In re* NELSON.

1. Under the provisions of Laws 1890, p. 254, c. 105, that all laws in force in the territory when the state was admitted, not inconsistent with the state Constitution, shall continue in force until amended or repealed, Comp. Laws 1887, § 426, authorizing judges of circuit courts, on the request of the board of commissioners, or on their own motion, to appoint and hold special terms of circuit court in any county or subdivision, not having been amended or repealed, is in force.

2. If subsequent legislation was required to give effect to Const. art. 5, § 28, providing that special terms of circuit court "may be held under such regulations as may be provided by law," it 'became operative by the enactment of Laws 1890, p. 254, c. 105, declaring territorial laws not inconsistent with the state Constitution to be in force, which, in effect, re-enacted Comp. Laws 1887, § 426, authorizing circuit judges to appoint and hold special terms of court.

3. Laws 1890, p. 174, c. 76; fixing the regular terms of circuit courts, did not, by implication, repeal Comp. Laws 1887, § 426, authorizing circuit judges to appoint and hold special terms of court.

4. Under Const. art. 5, § 27, declaring that "at least one term of the circuit court shall be held annually in each organized county," and section 33, declaring that "until the Legislature shall provide by law for fixing the terms of courts, the judges  *  *  *  shall fix the terms thereof," a circuit judge may call a special term of court in a newly organized county where more than one year will intervene before the time fixed by law for holding the first regular term of court.

5. Comp. Laws, §§ 7312-7318, providing for the removal of a criminal action prosecuted by indictment, on the application of the state's attorney, from the court in which it is pending, if the offense charged be punishable with death or imprisonment in the penitentiary, where it appears that a fair and impartial trial cannot be had in such county or subdivision, violated Const. art. 6, § 7, which declares that "in all criminal prosecutions, the accused shall have the right to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

(Opinion filed March 19, 1902.)

Original application of Olof Nelson for a writ of habeas corpus.   Writ granted.

*G. P. Harben* and *Horner & Stewart*, for relator.

*J. G. Bartine*, State's Atty., and *Preston & Hannett*, for the State.

HANEY, P. J.   At a term of court appointed by the circuit judge, in Lyman county, begun on December 11, 1901, an in-

dictment was returned charging the relator with having committed the crime of grand larceny in that county, to which he entered the plea of not guilty. Thereafter, on application of the state's attorney, supported by affidavits, and against the objection and protest of the relator, supported by affidavits, the place of trial was changed to Sanborn county on the ground that a fair and impartial trial could not be had in Lyman county; and the relator, then in the custody of the sheriff of Lyman county, was ordered into the custody of the sheriff of Sanborn county, to be by the latter retained until discharged by due process of law or released on bail. While the former sheriff was proceeding to execute this order the writ issued in this proceeding was served, in obedience to which he brought the relator into this court, together with his return, showing in detail the proceedings and orders of the circuit court by virtue of which the relator is restrained of his liberty. Upon the facts stated in the sheriff's return, it is contended that the relator is unlawfully restrained for the following reasons: (1) The circuit judge was without authority to order a special term of court; and (2) the circuit court was without authority to change the place of trial from the county in which the offense is alleged to have been committed, on the application of the state.

In discussing the first proposition, it will be assumed that, if the judge was without authority to appoint the term at which the indictment was returned, all proceedings based thereon are void. All territorial statutes, not repugnant to the state Constitution, in force when the state was organized, continued in force. Cutting v. Taylor, 3 S. D. 11, 51 N. W. 949. The state Legislature, at its first session, passed an act, which took effect

February 6, 1890, wherein it was provided that all laws in force in the territory when the state was admitted, not repugnant to or inconsistent with the state Constitution, should continue and be in full force and effect until altered, amended, or repealed. Laws 1890, p. 254, c. 105. When the state was admitted, district judges were authorized to order special terms of court, even in counties where the time for holding regular terms was fixed by the Legislature. Myers v. Mitchell, 1 S. D. 249, 46 N. W. 245. Unless the statute conferring such authority conflicts with the state Constitution, or has been repealed since February 6, 1890, it is still in force. It reads as follows: "The judges of the circuit courts, respectively, shall have power whenever thereunto requested by the board of commissioners of the county wherein terms of court are regularly holden, or upon their own motion without such request, by an order to that effect, to appoint and hold terms of the circuit court in any county or subdivision; and such judges shall have power to adjourn courts from time to time as they shall deem expedient for the due administration of justice; and such terms shall in all respects be considered the same as the general terms provided in this act. The courts herein appointed shall continue as long as the business therein shall require. The terms of the circuit courts for subdivisions composed of a single county only shall be held at their respective county seats." Comp. Laws 1887, § 426; Laws 1891, p. 3, c. 4. The Constitution contains these provisions: "The time of holding courts within said judicial circuits and counties shall be as provided by law; but at least one term of the circuit court shall be held annually in each organized county, and the Legislature shall make provision for attaching unorganized counties or territory to or-

ganized counties for judicial purposes. Special terms of said courts may be held under such regulations as may be provided by law. Until the legislature shall provide by law for fixing the terms of courts, the judges of the supreme, circuit and county courts respectively shall fix the terms thereof." Const. art. 5, §§ 27, 28, 33. If subsequent legislation was required to give effect to section 28, it became operative by reason of chapter 105, p. 254, Laws 1890, which in effect re-enacted the statute quoted; giving it the force of a law enacted by the state Legislature in the first instance. The contention that the Constitution does not execute section 28, "because it provides no regulations whatever for holding special terms," is not tenable. There is no limitation of legislative power in section 28. It authorizes special terms, but requires that any regulations prescribed by law shall be observed in holding them. What such regulations shall be, rests alone in the discretion of the Legislature. It is provided that such terms may be held when ordered by the circuit judge, upon the request of county commissioners or upon his own motion. While it might be desirable to have the statute provide more adequate means of informing litigants and the general public of the time when special terms will be held, we do not apprehend that any substantial rights will be invaded by its operation. Such terms will not be of frequent occurrence. Instances where interested persons exercising ordinary diligence fail to receive notice will be rare, and in such cases the law will afford ample means of relief. Numerous terms of court were held by authority of this statute in territorial times, without its ever having been mooted, so far as we are aware, that any one was or could be thereby deprived of life, liberty, or property without due pro-

cess of law. Unless held to have that effect, the statute does not conflict with any provision of the state Constitution. It cannot be seriously contended that it should be so regarded. To so regard it would be to annul a majority of the judgments rendered by the territorial district courts, and numerous adjudications since the state was admitted. The Constitution itself authorizes and requires terms of court to be held by order of the judges where terms have not been provided by law, without any provision as to what notice shall be given. Const. art. 5, § 33. In this respect the statute is not more defective than the Constitution. The law in question was not repealed by chapter 76, p. 174, Laws 1890. The distinction between terms fixed by the Legislature and terms ordered by the judges, or what may be designated as regular and special terms, is discernable in the history of our territorial and state legislation. It exists in the Constitution, and was recognized by this court in Myers v. Mitchell, supra. Chapter 76 relates to regular terms, and cannot be regarded as having repealed a statute relating to the subject of special terms. We therefore conclude that the circuit judge was authorized to order the term of court at which the relator was indicted.

There is another view, not alluded to in the argument of counsel, which leads to the same conclusion. Lyman county was organized in May, 1893. No action regarding terms of court therein was taken by the Legislature until 1901, when it was enacted that the circuit court shall annually hold a term therein on the third Tuesday in June. This act took effect July 1, 1901. Laws 1901, p. 128, c. 102 (Laws 1889, p. 5, c. 3). Hence no regular term has ever been held in that county, or can be held therein before June 17th in the present year. The

Constitution itself required that at least one term of the circuit court should be held in the county each year since it was organized, and it expressly authorized the judge to fix the terms until provided for by the Legislature. Const. art. 5, §§ 27, 33. Therefore authority to order a term at any time prior to the date fixed by law for the first regular term in this particular county existed beyond any possible question

The second proposition presents an important question of constitutional law. Our statute expressly authorizes the removal of a criminal action prosecuted by indictment, on the application of the state's attorney, from the court in which it is pending, if the offense charged be punishable with death or imprisonment in the penitentiary, whenever it shall appear to the satisfaction of the court, by affidavits, or, if the court shall so order, by other testimony, that a fair and impartial trial cannot be had in such county or subdivision. Comp. Laws, §§ 7312-7318. It is insisted that the statute, so far as it permits a change of place of trial from the county in which the crime is alleged to have been committed, without the consent of the accused, is in conflict with the state Constitution, which declares that "in all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Const. art. 6, § 7. This clause, or language of similar import, will be found in numerous state Constitutions. It is simply declaratory of an incident of the common-law right of trial by jury. Sir William Blackstone says: "When, therefore, a prisoner on his arraignment has pleaded not guilty, and for his trial hath put himself upon the country, which country the jury are, the sheriff of the county must return a

panel of jurors  *  *  *  freeholders, without just exception, and of the visne or neighborhood, which is interpreted to be of the county where the fact is committed." 2 Cooley, Blackstone (3d Ed.) 491. The right thus guarantied is ancient, sacred, and absolute. Its alleged infringement was declared to be one of the causes which impelled the colonies to separate from the mother country. It can neither be taken away nor abridged by the Legislature. What, then, is the nature and extent of this right? To what is one accused of crime entitled? "A speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed " · There is nothing uncertain or ambiguous in this language, except, perhaps, the use of the word "district," which has uniformly been construed to mean the trial district, or territory from which the jury is summoned. In this state, where unorganized territory may be attached to an organized county for judicial purposes, the phrase "judicial subdivision," frequently found in our statutes, would have more accurately defined the right than the word "district." However, so far as this proceeding is concerned, the clause may be considered as if the word "district" were eliminated, as the territory from which the jury would be selected is coextensive with the boundaries of Lyman county. Then it is relator's constitutional right to be tried by an impartial jury of Lyman county. The jury must not only be impartial. It must also be of the county in which the crime is alleged to have been committed. Until the accused shall have been tried by such a jury, or shall have waived his right by consenting to a change of place of trial, he cannot be lawfully convicted. If such a jury cannot be secured, there will be no tribunal before whom he can be tried, and the ends

of justice in an individual instance may be defeated. But however regretable such a result might be, its possibility or even probability cannot be invoked to justify a disregard of so plain a provision of the state Constitution. Cases may arise when an indispensable witness residing out of the state refuses to attend a criminal trial. Under such circumstances, it would hardly be contended that his deposition should be read on the part of the prosecution for the reason that the commission of the crime could not otherwise be established, where the Constitution declares that the accused shall have the right "to meet the witnesses against him face to face." Const. art. 6, § 7. So far as the statute authorizes criminal actions to be tried out of the county or district in which the offense is alleged to· have been committed, without the consent of the accused, it plainly and palpably conflicts with the state Constitution, and is therefore of no force or effect whatever. These views are supported by the far greater weight of authority. People v. Powell, (Cal.) 25 Pac. 481, 11 L. R. A. 75; Wheeler v. State, 24 Wis. 52; Osborn v. State, 24 Ark. 629; Olive v. State, (Neb.) 7 N. W. 444. The only decisions to which attention has been called which seem to announce a different doctrine are Commonwealth v. Davidson, (Ky.) 15 S. W. 53, and State v. Miller, 15 Minn. 344 (Gil. 277). The former is not strictly in point, for the reason that in Kentucky the common-law right of trial by jury has been modified by the state Constitution, which provides that "the General Assembly shall not change the venue in any criminal or penal prosecution, but shall provide for the same by general laws." Const. Ky., art. 2, § 38. In the latter, the contention of the state was accepted, rather than discussed, without exhaustive research, as the following excerpt from the

opinion will clearly. disclose:     "It is true that in that case [State v. Gut, 13 Minn. 343 (Gil. 315)] the constutionality of the law is assumed without discussion; but argument is not necessary to sustain it against the interpretation put by the petitioners upon the clause of the Constitution in question, viz: that it positively requires that the criminal shall be tried in his county or trial district, and not elsewhere, for this is not only supported by no authority, but would operate to deprive him of the privilege intended to be thereby secured to him or prevent his being tried at all, if and whenever, for any reason, an impartial jury could not be had in his county or trial district."   The decision was rendered in 1870.   Prior to that time Wheeler v. State, supra, and Osborn v. State, supra, had been decided under Constitutions containing the same provision that was being construed by the Minnesota Supreme Court.   Evidently the attention of that learned court was not directed to those earlier and highly respectable authorities, and it cited no adjudications in support of the views expressed in the concluding portion of its opinion, which, from the context, do not appear to have been necessary in disposing of the case then before it.   Again, the weight of the decision as an authority on the question under discussion is lessened by the fact that the views therein expressed are not in harmony with a former decision of the same court, to which no reference is made. State v. Robinson, 14 Minn. 447.

We think, upon principle and authority, the conclusion cannot be escaped that the circuit court exceeded its jurisdiction in changing the place of trial without the relator's consent, and that its order to that effect made upon the application of the state's attorney was void.   The relator being in the custody

of the sheriff of Lyman county, subject to the orders of this court, an order will be entered continuing him in such custody for appearance and trial at the next term of the circuit court in Lyman county, there to abide the orders of that court as if no change of place of trial had been ordered, and to abide the orders of the circuit court regarding bail.