FAJARDO, PETITIONER, *v.* SOTO NUSSA, DISTRICT JUDGE, ET AL.,
RESPONDENTS.

PETITION for a Writ of *Certiorari* to the Judges of the Dis-
trict Court of Aguadilla and San Juan, Section 2, in a
Prosecution for Bribery.

No. 148.—Decided July 28, 1915.

CHANGE OF VENUE—TRIAL BY JURY.—In authorizing change of venue in criminal
    cases the Legislature has not exceeded its powers or done any great violence
    to the modern common law trial by jury, either as it existed in the United
    States at the time of the legislation in question or as it was understood at
    the time the British colonists brought it to America.

ID.—JURY.—When a change of venue is sought on the ground that a fair and impartial trial cannot be had, an attempt to secure a jury is not an indispensable prerequisite.

ID.—AFFIDAVIT—EVIDENCE.—In accordance with the statutory provision for the hearing of evidence when affidavits are presented in support of a motion for change of venue, the court, of its own motion or upon motion of the accused, may cause the affiants to appear for examination as to their actual knowledge of the matters to which they testified by affidavit, or for cross-examination.

ID.—SECOND' CHANGE OF VENUE—NEXT NEAREST DISTRICT.—Both the spirit of the law (section 173 of the Code of Criminal Procedure) and the fundamental principles upon which its salutary provisions, as amended in 1904, are based, require that any district court allowing a second change of venue should order the case sent to the district the court-house of which is next nearest and most accessible to the district in which the case originated, in the absence of any showing as to the existence of similar objectionable conditions; and in any event it should be guided by the same principles in selecting any other district, giving preference always, as between two or more equally eligible places of trial, to the one nearest the district of original jurisdiction.

ID.—NEW TRIAL.—The rules governing a motion for a new trial upon the ground of newly discovered evidence, for example, should apply by analogy and with equal force to motions for change of venue.

The facts are stated in the opinion.

*Mr. Willis Sweet* for the petitioner.

*Messrs. Howard L. Kern,* Attorney General, *R. W. Perkins, Jr.,* Assistant Attorney General, and *Jaime Sifre, Jr.,* Special Prosecuting Attorney, for the respondents.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The facts are fairly and concisely stated in the brief of counsel for respondents as follows:

"These cases originated in three indictments for bribery which were formulated by The People of Porto Rico against Mateo Fajardo Cardona in the District Court of Mayagüez. Before going to trial upon these indictments, the prosecution moved that the cases be transferred to some other judicial district for the reason that The People of Porto Rico could not obtain a fair and impartial trial in Mayagüez. Affidavits were presented in proof of this fact and after due discussion of the motion the court decreed the transfer of the cases to the District of Aguadilla. In accordance with this order, the secretary of the Mayagüez court dispatched to the court of Aguadilla a certified copy of the record.

"Before the trial in Aguadilla the prosecution again made a motion asking that these cases be transferred to some other district, on the ground that The People of Porto Rico could not obtain a fair and impartial trial in Aguadilla. This motion, however, requested that in the event that it was granted, the order decreeing the transfer should not send the cases to the District of Arecibo, since a situation similar to that prevailing in Mayagüez and Aguadilla would prevent a fair and impartial trial of The People's side of the case in that district. Affidavits were presented in support of this motion and the motion was argued. After due consideration, the court of Aguadilla issued an order granting the motion and decreeing that the cases be transferred to the District Court of San Juan. In accordance with this decree, the secretary of the District Court of Aguadilla made out a certified copy of the record of the cases as they appeared on file in Aguadilla and dispatched these certified copies to the District Court of San Juan. The cases were set for trial in San Juan on the 28th of June and witnesses were summoned. In the meantime, however, and subsequent to the transfer of the cases from Aguadilla and the fixing of the date of the trial in San Juan, this Supreme Court issued a writ of *certiorari* against the Judge of the District Court of Aguadilla, commanding him to certify up the original record in the cases against Mateo Fajardo Cardona. On June 26, moreover, in accordance with an amendment of the petition seeking this writ, a similar writ of *certiorari* was issued against the Judge of the District Court of San Juan, Section 2, commanding him to certify up the original record in the cases against Mateo Fajardo Cardona. In accordance with these writs, the trial was suspended and returns were made by the judges respectively, placing before this court a record of the proceedings in these cases to date."

Petitioner suggests the following outline of the issues tendered by him:

"The questions and propositions of law involved in this case are substantially as follows:

"*a*. Sec. 8 of the Code of Criminal Procedure provides that all offenses must be tried in the district wherein the offense is committed.

"Sec. 171 of said code provides that criminal causes may be removed on application of the District Attorney.

"Which shall prevail; and this involves,

"*b*. The power of a territorial legislature to enact a provision of law that is a direct violation of the Constitution of the United States.

"*c.* Whether in authorizing the Legislature of Porto Rico to legislate at will, provided that it did not enact laws contrary to the laws of the United States, the legislature did not go beyond its constitutional powers in dealing with trial by jury when it undertook to clothe the District Attorney with the power of removal upon application, or grant the right of removal upon such application.

"*d.* Whether the court has power to make an order of transfer without first requiring, at least, an effort to obtain a jury.

"*e.* Whether the court, if authorized by law to transfer a cause, may select not only the district but the judge before whom the cause shall be tried.

"*f.* Whether under the law governing trial by jury the judge, in any Territory of the United States, as distinguished from a State of the Union, may order a criminal cause transferred for trial from the district wherein the offense is alleged to have been committed, except upon the causes shown in behalf of the accused that are of the ancient provisions of said law."

We need not discuss in detail subdivisions "*b*", "*c*" and "*f*". Although the proposition so stated suggests a fertile field for both historical and legal research, petitioner contents himself with the citation of *People* v. *Powell,* 87 Cal. 348, and *Hyde* v. *United States,* 225 U. S. 347.

If the syllabus may be trusted as a guide, the only points passed upon in the case last mentioned having any possible bearing upon any question involved in this case, are the following:

"There may be a constructive presence in a State, distinct from personal presence, by which a crime committed in another State may be consummated, and render the person consummating it punishable at that place.

"In construing criminal laws, courts must not be in too great solicitude for the criminal to give him immunity because of the difficulty in convicting or detecting him.

"In determining the place of trial there is no oppression in taking the conspirators to the place where the overt act was performed rather than compelling the victims and witnesses to go to the place where the conspiracy was formed.

"The size of our country has not become too great for the effective administration of criminal justice.

"Where a continuing offense is committed in more than one district, the Sixth Amendment does not preclude a trial in any of those districts. *Armour Packing Co.* v. *United States,* 209 U. S. 56.

"Overt acts performed in one district by one of the parties who had conspired in another district in violation of Section 5440, Rev. Stat., give jurisdiction to the court in the district where the overt acts are performed as to all the conspirators. *Brown* v. *Elliot,* p. 392, *post.*"

The opinion of the court by Mr. Justice McKenna further suggests that we should "fit the laws and their administration to the acts of men and not be led away by mere 'bookish theorick.'" And again, referring to the "immunity from punishment" which might follow "if the rule contended for be adopted," it is said, "the possibility of such a result repels the contention and demonstrates that to yield to it would carry technical rules and rigidity of reasoning too far for the practical administration of criminal justice." Even in the dissenting opinion by Mr. Justice Holmes, we find the admission that "it is one of the misfortunes of the law that ideas become encysted in phrases and thereafter for a long time cease to provoke further analysis." Such phrases are but straws to show the general and irresistible trend of modern judicial opinion toward the practical administration of substantial justice without regard to technical obstacles, in criminal as well as in civil cases.

Referring to the single other case relied upon, counsel say: "We cannot add to the reasons or the logic against granting a transfer in criminal causes that are so exhaustively set forth in *State* v. *Powell.*" The court that made itself famous by the decision in that case, however, apparently has not been satisfied to abide by either the "reasons or the logic" thereof. *People* v. *Prather,* 134 Cal. 386. The Michigan case so largely relied upon in *State* v. *Powell* does not bear out in full the conclusions drawn therefrom as shown by the very words quoted in the Powell case and as is clearly pointed out by the Michigan court in the subse-

quent cases of *People* v. *Peterson,* 52, N. W. 1039, and *People* v. *Fuhrman,* 61 N. W. 865; or, in any event, and even conceding that there is room for a difference of opinion in this regard, then the Kimball case, in so far as it does sustain the unfortunate doctrine announced by the California court, has been utterly repudiated by the two subsequent decisions mentioned.

The adverse criticism excited in other jurisdictions by the doctrine enunciated in *State* v. *Powell* is illustrated in *Barry* v. *Truax,* 65 L. R. A. 762; *State* v. *Durflinger,* 76 N. E. 291, and *State* v. *Holloway,* 146 Pac. 1071. See also *Zinn* v. *District Court,* 14 N. W. 472; *Hewitt* v. *State,* 30 Southern, 795; *Commonwealth* v. *Davison,* 15 S. W. 53, and *State* v. *Lewis,* 7 L. R. A., new series, 669, and note. But we need not dwell at length upon cases turning upon specific inhibitory provisions of the different state constitutions in the absence of any specific analogous limitation upon the powers of the Insular Legislature.

And inasmuch as petitioner has not attempted either to reconcile or distinguish the cases of *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362 at 370; *Kent* v. *People of Porto Rico,* 207 U. S. 113; *Ponce* v. *Roman Catholic Church,* 210 U. S. 296; *Hawaii* v. *Mankichi,* 190 U. S. 197; *Maxwell* v. *Dow,* 176 U. S. 581; *Dorr* v. *United States,* 195 U. S. 138; *Dowdell* v. *United States,* 221 U. S. 325, and *Díaz* v. *United States,* 223 U. S. 442, all of which are cited and discussed in the brief submitted by counsel for respondents, we need not now attempt an exhaustive analysis of such cases nor determine with absolute precision the extent to which the doctrine announced therein may be applied to control the case at bar.

We may note in passing, however, the following suggestion contained in plaintiff's brief.

"It may seem a far cry to compare the taking of George Washington to England or General Bolívar to Spain for trial when they became the respective leaders against their respective kings and re-

wards were out for their heads, to the bringing of Mateo Fajardo from his home district to San Juan for trial. But there is no difference in principle; and we regret to say that in this case there is not, in our opinion, any substantial difference in fact.''

There is perhaps no difference at bottom in the fundamental principle involved in either case; but it does not necessarily follow that such principle is of equally vital importance or to be blindly followed and rigidly adhered to in its pristine purity and vigor under all circumstances and in every jurisdiction where it is observed, without regard to common sense, degree of civic development, political status, the legislative will, or physical geographical conditions. We observe, for instance, in the dissenting opinion in *Hyde* v. *United States,* so strongly relied upon by petitioner, the following suggestion as to the influence of territorial extent (italics ours):

''Obviously the use of this fiction or form of words must not be pushed to such a point in the administration of the national law as to transgress the requirement of the Constitution that the trial of crimes shall be held in the State and district where the crimes shall have been committed. Art. III, Sec. 2, Cl. 3. Amendments, Art. VI. *With the country extending from ocean to ocean this requirement is even more important now than it was a hundred years ago,* and must be enforced in letter and spirit if we are to make impossible hardships amounting to grievous wrongs. In the case of conspiracy the danger is conspicuously brought out. Every overt act done in aid of it of course is attributed to the conspirators, and if that means that the conspiracy is present as such wherever any overt act is done, it might be at the choice of the Government to prosecute *in any one of twenty States* in none of which the conspirators had been. And as wherever two or more have united for the commission of a crime there is a conspiracy, the opening to oppression *thus made is very wide indeed.* It is *even wider* if success should be held not to merge the conspiracy in the crime intended and achieved. I think it unnecessary to dwell on oppressions that I believe have been practised or on the constitutional history impressively adduced by Mr. Worthington to show that this is one of the wrongs that our forefathers meant to prevent.''

This argument is anticipated and answered in the majority opinion as follows (italics ours):

"We realize the strength of the apprehension that to extend the jurisdiction of conspiracy by overt acts may give to the Government a power which may be abused, and we do not wish to put out of view such possibility. But there are counter considerations. It is not an oppression in the law to accept the place where an unlawful purpose is attempted to be executed as the place of its punishment, and rather conspirators be taken from their homes than the victims and witnesses of the conspiracy be taken from theirs. We must not, in too great a solicitude for the criminal, give him a kind of immunity from punishment because of the difficulty in convicting him—indeed, of even detecting him. And this may result, if the rule contended for be adopted. Let him meet with his fellows in secret and he will try to do so; let the place be concealed, as it can be, and he and they may execute their crime *in every State in the Union and defeat punishment in all.* And the suppositions are not fanciful, as illustrated by a case submitted coincidently with this. *Brown* v. *Elliott, post,* p. 392. *The possibility of such a result* repels the contention and demonstrates that to yield to it would carry technical rules and rigidity of reasoning too far for the practical administration of criminal justice. We see no reason why a constructive presence should not be assigned to conspirators as well as to other criminals; and we certainly cannot assent to the proposition that it is not competent for Congress to define what shall constitute the offense of conspiracy or when it shall be considered complete and do with it as with other crimes which are commenced in one place and continued in another. Nor do we think that *the size of our country has become too great* for the effective administration of criminal justice."

Similarly, Mr. Justice Brown, dissenting in *State* v. *Lewis, supra,* says (italics ours):

"I concur in so much of the opinion of the court as upholds the power of the general assembly generally to provide for the removal of criminal actions to *an adjoining county* either before bill found or after. I know of no clause of our Constitution, Federal or State, which prohibits it. Assuming that the jurors must be summoned from the 'vicinage,' as at common law, I think *an adjoining county might well be held to be within the neighborhood,* for that is what the term signifies, although in England, *where the counties are very*

*large,* it is held to be a jury from the county. I would hesitate to hold that the legislature has the power to enact that one who commits a crime in *Cherokee* may be indicted and tried in *Currituck.*"

Under this view of the matter, if we are to distinguish at all upon facts, it is indeed a far cry from the case of Washington and Bolívar to that of petitioner, who, aside from any question of time or civilization, is not threatened with transportation overseas far from his friends, home and native land, and who is protected by nature herself from the possibility of being dragged very far in any one direction within the confines of this island, itself a "narrow strip of seagirt soil," the smallest of the Greater Antilles and little more than a visne or vicinage.

We do not think the legislature, in authorizing·a change of venue in criminal cases, exceeded its powers or did any great violence to the modern common law trial by jury either as it existed in the United States at the time of the legislation in question, or as it stood at the time the British Colonies brought it to America.

The cases cited by counsel for respondent, *Randle* v. *State,* 28 S. W. 953; *People* v. *Georger,* 95 N. Y. Sup. 790; *People* v. *Diamond,* 72 N. Y., Sup. 179; *People* v. *McLaughlin,* 150 N. Y. 365, none of which seem to be in conflict with *People* v. *Powell, supra,* indicate that when the change of venue is sought upon the ground that a fair and impartial trial cannot otherwise be had, an ‑attempt to secure a jury is not an indispensable prerequisite. Petitioner cites no authority to the contrary and, in the circumstances and without independent investigation at this time, we hold that under our statute and the facts of this case such previous attempt is not required.

Inasmuch as petitioner has neither suggested any reason whatever why the Aguadilla court, if it had jurisdiction to order the removal to San Juan, could not also designate the section of the San Juan district court to which the record should be sent, r · | indicated how or by whom this question

might properly be determined if not decided by the court *a quo,* we abstain from serious consideration of the point so presented.

Under the subhead "Other points involved" petitioner raises two very interesting and important questions of practice as follows:

"But few other points are involved. The question of the sufficiency of the grounds set forth upon which the removal is asked, if the court shall hold that it has the power of removal; the right of the court to remove the case to San Juan as prayed, which involves the ignoring of the requirement that under the law, the case be sent from this court to Ponce, the next adjoining district to Mayagüez after Aguadilla.

"(1) The ground upon which the removal was asked cannot be said to amount to anything in law. This is said without reflection upon the *fiscal.* But it is plain that without a legal test, in legal form, the possibility of obtaining a jury or having a fair trial cannot be passed upon by the court.

"That no value can be attached to affidavits gathered up about the country, mere hearsay declarations, that may be collected by government officials without limit, on any subject, if *they be affidavits of a general character,* is a fact as well known to the court as any other fact in life. *It is not a legal manner in which to test a legal question of any character.*

"The California case cited discussed the sufficiency of the showing required.

"We cannot cite authorities to prove negatives. No such effort to transfer a cause was ever before attempted upon such a showing. No precedent can be cited, because there can be no precedents for such an effort at transfer.

"(2) The transfer from Mayagüez to Aguadilla was in accordance with law, as far as the selection of the proper district was concerned; that is, if the Mayagüez court had the power to transfer the cause at all (which we protest said court did not have the power to do), the cause was sent to the right forum. That is because the act rests upon the ancient right of the defendant to be tried at home, and not as far from home as the prosecution can transfer him. Therefore it is that should this court hold that said court had the power to transfer, and that a sufficient showing was made upon which to base such

an order, then it should follow the ancient rule, based upon the ancient right in the premises, and send the case to Ponce, the next nearest district. To whatever extent practice can sanctify, and justify, and demand action, then to that extent the request to transfer this cause to Ponce, if it is to be transferred at all, appeals with unanswerable force to this court    *    *    *.''

It does not appear that the first of the two questions so raised,—in so far as the element of procedure, the only element with which we are concerned, is involved,—was fully and squarely presented to the district court; and we therefore prefer to leave the matter open for the present. We may call attention, however, to the statutory provision for the hearing of evidence and, in view of the general tenor and effect of the affidavits relied upon herein, we venture the further suggestion that affiants at least very properly might be called by the court, either of its own motion for examination as to their actual knowlege of the matters to which they testified by affidavit, or at the instance of defendant for cross-examination in this regard.

Coming to the second of these two questions, we find that counsel for respondents, in the course of a discussion of the proposition that ''questions as to sufficiency of the proof submitted to show the necessity for the changes of venue are not before the court for review in this proceeding,'' dismiss the matter with a bare reference, as follows: ''It is on this principle that the decision of the Aguadilla court to transfer the case to San Juan, rather than to some other district, constitutes the exercise of a discretion that cannot now be attacked.''

We can neither concur in the view so suggested nor acquiesce in so summary a disposition of what to our mind has finally come to be the crux of this case. Turning to the record of the proceedings in the Aguadilla court we find some six pages of written argument by counsel for the Government upon this point, and, among other quotations, the following from Bishop on Criminal Procedure, vol. 1, p. 53:

"In some of the States, by statute, the venue can be changed but once; in others, there is no such limitation."

The matter is somewhat differently stated in 12 Cyc. at page 250: "By statute more than one change of venue is often prohibited, and generally, where the statute makes no provision for a second change, a prohibition of more than one change will be implied."

It is true that section 171 of our statutes provides for the removal of a criminal case by "a district court in which it is pending"; but this language is open to construction in the light of its context. Section 173 speaks of objections to the adjoining district "sufficient to have authorized the change of venue from said district *had the case originated there.*" And section 176 expressly provides that "*the court to which the action is removed must proceed to trial and judgment therein as if the action had been commenced in such court.*" It also provides for the transfer, in case of necessity, of the *original* pleadings or other papers by the court *from which the action is removed,* and it is quite evident that this provision, in the event of a second transfer, could have no application to the court making such transfer.

Moreover, it is equally clear that the law of 1902 was much broader and more sweeping in its terms than at present, leaving the matter of procedure, both as to the showing required of the applicant and as to the district to which the case should be sent, entirely to the discretion of the district court, and that the amendment of 1904, if it means anything at all, involves certain limitations and restrictions upon the discretion of the court not contained in the former law, or, at least, tends to regulate and control to some extent the manner in which such discretion shall be exercised. Thus, section 173, as enacted in 1902, provided simply that "*If the court be satisfied that the representations of the applicant are true,* an order must be made transferring the action to the proper court of *some convenient district,* free from a

like objection." As amended in 1904 it now reads (italics ours):

"When an application is presented under any provision of the two preceding sections, the court *shall hear the evidence thereon,* and if satisfied that the allegations in the application are true, the court, or the municipal court in lieu thereof, shall enter an order transferring the case for trial to *an adjoining district, the court-house of which is the nearest and most accessible, unless it be made to appear* to the satisfaction of the court *that such nearest district is subject to some objection sufficient to have authorized a change of venue from said district had the case originated there, in which case* the cause shall be transferred to such district as the court may elect."

In the circumstances it might be said with some degree of plausibility that the law as it stands to-day does not contemplate a second change of venue and that the district of Aguadilla was wholly without jurisdiction to order the transfer complained of herein. We merely suggest this view of the matter, however, without so holding. Obviously such a doctrine, however sound in principle, might, under certain conceivable conditions, work a real hardship upon the defendant, and, under the terms of the statute, we could not, if we would, establish one rule for the defendant and another for the State. *Ubi lex non distinguit, nec nos distinguere debemus.* And we may add it is a poor rule that will not work both ways.

"Courts cannot be too careful, especially in trials of the graver felonies, in awarding to defendants the full measure of their rights under the law, and in restricting the prosecution within the limitations enjoined by law. The State in her wisdom and humanity has placed guarded restrictions around the trials of her citizens, and has guaranteed to them the enjoyment of certain rights and privileges, even though they stand under grave accusations for a violation of her laws. And when she comes into her own courts, in the person of her law officer, and demands the forfeiture of the life or the liberty of the citizen, she is entitled to no more favor or consideration than the humblest citizen in the land. Such is her own law, and she would not change it if she could." *Rothschild* v. *State,* 7 Texas Court of Appeals Reports, 540.

We think it too clear for argument, however, that both the spirit of the law and the fundamental principles upon which its salutary provisions, in their amended form, are based, require that any district court allowing a second change of venue should order the case sent to the dictrict the court-house of which is next nearest and most accessible to the district in which the case originated, in the absence of any showing as to the existence of similar objectionable conditions in such next nearest district; and should in any event be guided by the same principle in selecting any other district, giving preference always, as between two or more equally eligible places of trial, to the one nearest the district of original jurisdiction.

We think also that applications for such subsequent changes should not be encouraged, and, in this particular case, that the applicant should not have alleged merely that the conditions said to exist in Aguadilla and Arecibo were unknown to applicant at the time of the transfer from Mayagüez; but should have set forth also and shown to the satisfaction of the court that such facts could not reasonably have been supposed to exist or that the same could not have been ascertained by such applicant in the exercise of due diligence prior to the time of such first application. In other words, we see no reason why the rules governing a motion for a new trial upon the ground of newly discovered evidence, for example, should not apply by analogy and with equal force to a case of this kind.

There is nothing whatever in the record to suggest any possible reason why the District Court of Aguadilla sent these cases to the District of San Juan in open disregard of defendant's earnest protest in anticipation of such action and formal request in writing that the same should go to Ponce as the next nearest district to Mayagüez; and it follows that, in so far as appears either from the record of the proceedings in the district court or from the return made

to the writ issued herein, the District Court of Aguadilla has never exercised at all the legal discretion conferred upon it by law, or, if it has, then, in so doing, it has not observed the procedure prescribed by law in this regard.

The several orders complained of must be reversed and the case remanded to the District Court of Aguadilla for further proceedings not inconsistent herewith.

*Petition granted and orders set aside.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.